IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| VICTORIA J. DELGADO, | ) | CASE NO. 04-03283-C |
| | ) | |
| CARTER LeFLORE and | ) | CASE NO. 04-03289-C |
| VIOLET LeFLORE, | ) | |
| | ) | |
| CHRISTA D. JOHNSON | ) | CASE NO. 04-03357-C |
| | ) | |
| KEITHA M. ULFERTS-TAYLOR | ) | CASE NO. 04-03754-C |
| | ) | |
| CAROL BOYD | ) | CASE NO. 04-04537-C |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER**

This matter was heard on January 26, 2005. Attorney John Schmillen appeared for the U.S. Trustee. Also appearing was Mr. Gregory Hughes, the principal in Give Me Liberty Self Help Law Center and Pro Se Association. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

**STATEMENT OF THE CASE**

This hearing stems from Give Me Liberty's failure to file fee disclosure statements in these Chapter 7 cases. Also, the U.S. Trustee has requested the Court examine the fees paid to Mr. Hughes and Give Me Liberty for preparation of the Debtors' bankruptcy petitions and the appropriateness of Give Me Liberty's services. The Court points out for the benefit of the Debtors that are named in this ruling, its impact relates solely to Mr. Hughes and his business, "Give Me Liberty Self Help Law Center & Pro Se Association."

**FINDINGS OF FACT**

Each of the above-captioned Debtors filed voluntary Chapter 7 petitions pro se. In completing their petitions, these Debtors enlisted the services of Mr. Gregory Hughes (Hughes). Hughes is a bankruptcy petition preparer who

operates a business in Cedar Rapids, Iowa, named "Give Me Liberty Self Help Law Center & Pro Se Association" (Give Me Liberty). It is structured as a sole proprietorship. Although Give Me Liberty has "volunteers," no one, other than Hughes, receives compensation for services. Hughes provided all of the start-up capital for Give Me Liberty, pays all of its operating expenses, and reaps all of the pecuniary gain from the enterprise. Give Me Liberty began operations in February of 2004.

Hughes describes Give Me Liberty as "pretty much identical" to "We The People," one of the nation's largest legal document preparation companies. He testified, however, that Give Me Liberty has one distinct competitive advantage to We The People. While We The People is solely in the business of document processing, Give Me Liberty both processes documents and, through its "Pro Se Association," provides an avenue for its customers to conduct legal research and, more importantly, get advice on their legal matters. It is this exchange of advice that generates significant legal issues.

The exact details of the organization's operating procedures remain unclear. The record suggests the conclusion that Give Me Liberty may also be involved in dissolution proceedings, father's rights, and some small claims actions. Despite this uncertainty and Hughes' arguments to the contrary, it is apparent that the activities of Give Me Liberty and the "Pro Se Association" are so intertwined that they must be considered a single operating unit. Accordingly, unless stated otherwise, any reference in this opinion to Give Me Liberty is intended to include both the document preparation service and the "Pro Se Association."

The U.S. Trustee filed with this Court a "Motion for Order Directing Examination of Fee Paid to Bankruptcy Petition Preparer" in the captioned cases. A hearing on the Motion was held on September 30, 2004. Hughes was present at the hearing. It was determined that, in lieu of making a final determination on the appropriateness of Give Me Liberty's pricing, it would treat the September 30 hearing as preliminary and schedule a final hearing at a later date to determine the following:

> (1) the appropriateness of any advertising in the media by Give Me Liberty . . . ; (2) the nature of the business and whether the business constitutes

2

>     the unauthorized practice of law; (3) what services
>     this business provides to its members and whether
>     the same constitutes the unauthorized practice of
>     law; and (4) the appropriateness of the fees charged
>     as a petition preparer.

See Order re U.S. Trustee's Motion for Order Directing Examination of Fee Paid to Bankruptcy Petition Preparer, Docket No. 9 (Oct. 1, 2004).  After several months of discovery and motions, the final hearing was held on January 26, 2005.

    Give Me Liberty describes itself as a "Self Help Law Center" where non-attorneys help other non-attorneys perform legal research and prepare legal documents for filing.  Although the fee charged has been modified periodically since the start of this case, Give Me Liberty originally charged a fee of $350 for its Chapter 7 bankruptcy services.  This fee consists of a $120 membership fee and a $230 petition preparation fee.  Hughes stated that the fee of $350 was established by comparison with the fee that We The People charges for bankruptcy petition preparation at its Minneapolis, Minnesota office.  A "member" must pay both the preparation fee and the membership fee in order to have a petition prepared by Give Me Liberty.

    Hughes, the owner and founder of Give Me Liberty, acts as the organization's sole petition preparer.  He has attempted to insulate himself from the bankruptcy preparation process by structuring his organization so that any counseling is performed by "volunteers" in the "Pro Se Association."  Hughes disclaims any knowledge of the interactions between the "members" and "volunteers."  The petition preparation service and the pro se service occur at the same location and under the auspices of the same organization.  This is reflected in the fact that during the petition preparation process, Hughes "flags" any errors or omissions in the documents and instructs the debtors that, while he is unable to provide advice on how best to correct problems, a "volunteer" is available to provide counseling.

    Give Me Liberty was created for the purpose of providing assistance to individuals undertaking the task of self-representation.  The organization provides this assistance in several ways.  First, Give Me Liberty has a document preparation service to assists its "members" in typing court

3

filings and other legal forms.  Second, Give Me Liberty, through its "Pro Se Association," provides its "members" with access to a law library and assistance from either a "volunteer" or fellow "member."  Give Me Liberty encourages its "volunteers" to advise its "members" on their legal matters.  Give Me Liberty's membership agreement, its print advertising and the testimony of several of its "members" establish this relationship.

A newspaper advertisement by Give Me Liberty states that "[a]s a member you have the opportunity and right to speak with other members and/or volunteers that help in the center."  Its membership agreement provides that:

> I understand that [Give Me Liberty] is a document processing center and by Iowa law cannot give legal advice.  However, I understand that by becoming a member of [Give Me Liberty] I can share information and research law.
>
> I understand that [Give Me Liberty] is a group that can and will share legal strategies.

The evidence establishes numerous instances of "volunteers" assisting "members" with their bankruptcy filings.  In Plaintiff's Exhibit 5, Debtor Delgado stated that a "volunteer" assisted her in filling out a schedule of exempt assets. See Plaintiff's Exhibit 5, "Transcription of Meeting of Creditors for Victoria Josephine Delgado" at 11.  Debtor Ulferts-Taylor testified that Give Me Liberty advised her on the different bankruptcy chapters and instructed her on the timing of her filing. See Plaintiff's Exhibit 2, "Transcription of Meeting of Creditors for Keitha M. Ulferts-Taylor" at 7-11.  Debtor Ulferts-Taylor also stated that Give Me Liberty guided her in preparation for her "341 Meeting of Creditors." Id. at 12.  Unlike Debtor Delgado and Debtor Ulferts-Taylor, Debtor Johnson stated that it was Hughes, not a "volunteer," that advised her throughout the preparation of her bankruptcy case.

After reviewing the evidence, the Court finds that Give Me Liberty provides assistance to its "members" filing for Chapter 7 bankruptcy protection.  Give Me Liberty "volunteers" assist the "members" with completing the Chapter 7 petition.  The "volunteers" advise the "members" regarding the claiming of exemptions; assist in determining which debts are priority,

4

secured and unsecured; and generally suggest where items belong on the petition based upon information provided by the debtor.  In addition, "volunteers" have also assisted "members" by preparing pleadings and other court documents to be used in the Iowa state courts.  In Debtor Ulferts-Taylor's Chapter 7 case, a Give Me Liberty "volunteer" filed an "Answer and Motion to Dismiss" in a suit initiated by Wells Fargo Auto Finance, Inc. against Debtor Ulferts-Taylor in the Iowa District Court for Johnson County.  See Plaintiff's Exhibit 2 at 10-11.

In promoting its business, Give Me Liberty has placed advertisements in the Cedar Rapids Gazette under the heading "Self Help Law Center."  These advertisements describe the organization as "Give Me Liberty Self Help Law Center and Pro Se Association."  The text of the advertisement is discussed in greater detail below.

**PRE-TRIAL MOTIONS**

The Court feels it is necessary to address documents filed by Hughes on the eve of final hearing.  On January 25, 2005, Hughes filed a "Motion for Continuance" seeking additional time to prepare for the final hearing.  This motion states that, after receiving discovery items from the U.S. Trustee on January 14, 2005, "[d]ue to holidays, weather conditions, and not receiving these items earlier, [Give Me Liberty] has not had adequate time to examine these items and request more time."  See Motion For A Continuance, Docket No. 34 (Jan. 25, 2005).  The Court denied Hughes' motion because of his failure (1) to comply with IANB Local Rule 5071-1, which, standing alone, is sufficient to deny the motion, Silberstein v. I.R.S., 16 F.3d 858, 859-60 (8th Cir. 1994), and (2) to present grounds to warrant a continuance.

In his final brief, Hughes argues that, had the Court granted him a continuance, he would have offered additional testimony that would further establish his separation from the "Pro Se Association."  However, Hughes was granted sufficient time to prepare his case.  He was well aware of the issues presented and was given all the time he needed to present his position.  A continuance was unnecessary and therefore, properly overruled.

On January 24, 2005, Hughes submitted a "Motion to Recuse" alleging that the Court had shown bias and that both

the Court and the U.S. Trustee were acting "in violation" of "Volume IV CODE OF IOWA" [sic]. <u>See</u> Motion to Recuse, Docket No. 32 (Jan. 24, 2005). He bases this allegation on an alleged connection that he shares with the Court's former martial arts instructor. Hughes used to study martial arts with the Court's former instructor and has since opened up a competing business. The undersigned's involvement was limited to exercise and recreation. This connection is tenuous at best and does not rise to a "disqualifying circumstance." <u>See In re Ryder</u>, Case No. 95-2000-CH, slip op. at 1 (Bankr. S.D. Iowa Sept. 28, 2004) (citing 28 U.S.C. § 455). In addition, the motion also alleges other grounds that, for the following reasons, are denied.

In <u>Ryder</u>, the bankruptcy court determined that both 28 U.S.C. §§ 144 and 455 "govern the disqualification of federal judges." <u>Id.</u> at 2. Taken together, these two sections provide that a party seeking recusal must (1) "timely file a legally sufficient affidavit accompanied by a certification . . . that the affidavit is filed in good faith;" and (2) "state facts that show impartiality, bias, or prejudice." <u>Id.</u> Hughes' motion fails to meet these requirements. The motion was not timely filed, it was not accompanied by a certification, and substantively, it failed to state "sufficient specific facts that would lead a reasonable person to find bias or impartiality." <u>Id.</u> at 3.

Even if the motion were procedurally adequate, the actions that Hughes complains of fail to meet the requirements set forth in § 455. <u>See</u> <u>Hall v. Small Business Admin.</u>, 695 F.2d 175, 179 (5th Cir. 1953); <u>SCA Serv. Inc. v. Morgan</u>, 557 F.2d 110, 115 (7th Cir. 1977). Hughes asserts that the Court made comments that he interprets as biased against Give Me Liberty. Section 455(b)(1) states that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Generally, "a judge's comments during a hearing are disqualifying only if they connote a fixed opinion–'a closed mind on the merits of the case.'" <u>United States v. Haldeman</u>, 559 F.2d 31, 136 (D.C. Cir. 1976). In addition, the reasonable person test of § 455(a) is not applicable to § 455(b)(1). <u>See</u> <u>In re Casco Bay Lines, Inc.</u>, 17 B.R. 946, 953 (B.A.P. 1st Cir. 1982). Instead, disqualification under this section requires a showing of personal bias or prejudice. <u>Id.</u>

6

This Court has stated several times that it bears no preconceived views on this case.  This Court has also indicated that it has no bias towards or against Hughes.  These statements continue to remain true.  Based upon the requirements in 28 U.S.C. §§ 144 and 455 and <u>Ryder</u>, Hughes has not carried his burden to show that recusal or disqualification is proper.

On January 25, 2005, Hughes filed a document entitled "Administrative Notice/Notice by Affidavit" with the explicit instructions that the document was "for judge only." <u>See</u> Brief for Give Me Liberty Self Help Law Center, Docket No. 42, App. #2 (Feb. 28, 2005).  Although the exact intent of Hughes' filing of this document is difficult to discern, at the final hearing, Hughes stated that it was intended to "put the Court on notice" that both the U.S. government and the government of the state of Iowa are illegitimate and without authority.

While the document as a whole is largely indecipherable, it will be briefly addressed.  It alleges that both the U.S. government and the government of the state of Iowa are "corporations" and that "the Uniform Commercial Code is the controlling law."  The document contains recitals from the U.C.C. and a conclusory analysis which makes the claim that the Court and the U.S. Trustee, as agents of "the corporation known as the United States," have acted in bad faith and outside the scope of their positions.  Hughes fails to state any authority for his proposition that the U.C.C. is controlling law in this matter.  These arguments are devoid of any legal basis and completely without merit.

## IS GIVE ME LIBERTY ENGAGING IN THE UNAUTHORIZED PRACTICE OF LAW?

Give Me Liberty argues that the actions of the "Pro Se Association" are protected by the First Amendment.  Hughes asserts that his actions as the sole petition preparer are sufficiently separate from the association to avoid being construed as the unauthorized practice of law.  As the Court has stated above in the Findings of Fact, because the two entities are completely intertwined, the actions of Give Me Liberty encompass both the actions of the "Pro Se Association" and the actions of the petition preparation service.

7

## THE UNAUTHORIZED PRACTICE OF LAW

The actions of bankruptcy petition preparers are governed by Bankruptcy Code § 110, which defines the standards of conduct for bankruptcy petition preparers and provides penalties if these standards of conduct are violated. See 11 U.S.C. § 110. Specifically, § 110 states, in pertinent part, that:

> (a)(1) "bankruptcy petition preparer" means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing[.]
>
> . . .
>
> (j) (1) . . . [T]he United States trustee . . . may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer [if]
>
>> (2)(A)(i) a bankruptcy petition preparer has–
>>
>>> (I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty; or . . .
>>>
>>> (III) <u>engaged in any other fraudulent, unfair or deceptive conduct</u>; [and]
>
> . . .
>
> (k) [n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, <u>including rules and laws that prohibit the unauthorized practice of law</u>.

11 U.S.C. § 110 (emphasis added). Section 110 was enacted because:

> [b]ankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to

> typing, far too many of them also attempt to provide
> legal advice and legal services to debtors.  These
> preparers often lack the necessary legal training
> and ethics regulation to provide such services in an
> adequate and appropriate manner.  These services may
> take unfair advantage of persons who are ignorant of
> their rights both inside and outside the bankruptcy
> system.  H.R. Rep. No. 103-384, at 40-41 (1994).

In re Farness, 244 B.R. 464, 466-67 (Bankr. D. Idaho 2000).

Bankruptcy courts typically look to state law for guidance on whether a bankruptcy petition preparer has violated § 110 by engaging in the unauthorized practice of law.  Farness, 244 B.R. at 470; In re Ellingson, 230 B.R. 426, 433 (Bankr. D. Mont. 1999); In re Kaitangian, 218 B.R. 102, 108 (Bankr. S.D. Cal. 1998); In re Stacy, 193 B.R. 31, 38 (Bankr. D. Or. 1996); Lawrence P. King, Collier Bankruptcy Manual ¶ 110.12. (3d ed. 2004).  Only a few Iowa cases deal with this topic, but Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. Sturgeon, 635 N.W.2d 679 (Iowa 2001), provides substantial guidance.

In concluding that a bankruptcy petition preparer had engaged in the unauthorized practice of law, the Court in Sturgeon noted that "[i]t is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law."  Sturgeon, 635 N.W.2d at 682.  It also held that the practice of law includes, but is not limited to, (1) representing others in court; (2) giving "legal advice and counsel to others relating to their rights and obligations under the law;" and (3) preparing or approving "the use of legal instruments by which legal rights of others are either obtained, secured or transferred. . . ." Id.  Essentially, "the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. Id.  Professional judgment "is the educated ability to relate the general body of law to a specific legal problem of a client." Id.  The court in Sturgeon further holds that a bankruptcy petition preparer's conduct of (1) soliciting information to complete bankruptcy forms; (2) choosing which forms to use; (3) rendering advice to clients as to the information required to complete the forms; and (4) inserting the information obtained into "appropriate blanks in the forms" constitutes the unauthorized practice of law. Id.

9

The Iowa Supreme Court notes that most bankruptcy courts that have addressed this issue hold that § 110 only permits a bankruptcy petition preparer to "type" the dictated or handwritten documents prepared by the debtor. Id., citing In re Agyekum, 225 B.R. 695, 702 (B.A.P. 9th Cir. 1998) ("[s]oliciting information from a debtor which is then typed into schedules constitutes the unauthorized practice of law."); Farness, 244 B.R. at 472 (using bankruptcy software that automatically places solicited information into the appropriate schedule does not save a preparer from engaging in the unauthorized practice of law); Kaitangian, 218 B.R. at 110 ("[p]lugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law"); In re Bachman, 113 B.R. 769, 774 (Bankr. S.D. Fla. 1990); In re Gabrielson, 217 B.R. 819, 827 (Bankr. D. Ariz. 1998); see also In re Guttierez, 248 B.R. 287, 299 (Bankr. W.D. Tex. 2000).

A non-attorney who prepares documents in exchange for compensation is subject to the affirmative obligations set out in § 110. In re Paskel, 201 B.R. 511, 515 (Bankr. E.D. Ark. 1996) (noting that the "in exchange for compensation" requirement neither requires that a petition preparer "personally benefit from the funds, nor permits [a preparer to] hide behind another entity, even a purportedly religious or charitable one"). These affirmative obligations include the obligation to refrain from the unauthorized practice of law which "constitutes a fraudulent, unfair or deceptive act within the context of 11 U.S.C. § 110[(j)(2)(A)(i)(III)]." In re Dunkle, 272 B.R. 450, 456 (Bankr. W.D. Pa. 2002); Farness, 244 B.R. at 470; In re Wagner, 241 B.R. 112, 119 (Bankr. E.D. Pa. 1999). Pursuant to § 110(j), a bankruptcy court may "enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer." 11 U.S.C. § 110(j)(1); see also Wagner, 241 B.R. at 119; Dunkle, 272 B.R. at 455.

Give Me Liberty qualifies as a bankruptcy petition preparer under § 110. The Court finds that Give Me Liberty has substantially exceeded the role of petition preparer and engaged in the unauthorized practice of law. Give Me Liberty advises its "members" regarding the claiming of exemptions; assists in determining which debts are priority, secured and unsecured; and generally suggests where items belong on petitions based upon information provided by the debtors. In

addition, it also assists "members" by preparing pleadings and other court documents to be used in the Iowa state courts.

Hughes does not deny that his "members" may be providing such advice. He argues, however, that they are constitutionally protected. He also argues that, if advice is being sought, it is between the "members" and does not involve him. He asserts his role is limited to legitimate petition preparation. The fact that Hughes does not personally engage in these activities is of no significance as to whether Give Me Liberty is engaging in the unauthorized practice of law. It is obvious from the record that Hughes established this business. It was designed specifically this way in order to claim separation of function when, in reality, it is a completely integrated business. Hughes' practice of "flagging" any problems and then urging "members" to seek guidance from "volunteers" is compelling evidence that true separation of function involving the petition preparation service and the "Pro Se Association" is a complete fiction.

## CONSTITUTIONAL PROTECTIONS

In asserting that it has not engaged in the unauthorized practice of law, Give Me Liberty contends that its actions are protected by the First Amendment to the United States Constitution. Give Me Liberty claims that, unlike other legal document processing centers organized as corporations, its status as a "Pro Se Association" affords it absolute protection under the First Amendment. It cites the following cases to support its argument that its actions are constitutionally protected: Matter of New York Lawyers' Ass'n v. Dacey, 28 A.D.2d 161, 283 N.Y.S.2d 984 (N.Y. App. Div. 1967); In re Nolo Press/Folk Law Inc., 991 S.W.2d 768 (Tex. 1999); and Faretta v. California, 422 U.S. 806 (1975). It also claims that the Court, in overseeing the Trustee's investigation of this matter, has "retaliated against Give Me Liberty" and violated its due process rights under the First, Fifth, Sixth and Ninth Amendments.

## FIRST AMENDMENT: FREEDOM OF ASSOCIATION

The right to freedom of association encompasses the rights to (1) expressive association and (2) to gather for the purposes of advancing shared beliefs. Democratic Party v. Wisconsin ex rel. LaFollete, 450 U.S. 107, 121-22 (1981); Hsu v. Roslyn Union Free Sch. Dist. No. 3, 85 F.3d 839, 859 (2d

11

Cir. 1996). The right to gather for advancing shared beliefs, which is at issue here, is also protected by the Fourteenth Amendment from infringement by any state. <u>Democratic Party</u>, 450 U.S. at 113. This right, however, is not absolute. <u>Id.</u> at 126. A compelling governmental interest will override the right to association. <u>Id.</u> States have a compelling interest in the practice of professions within their boundaries. <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 625 (1995). The legal profession is "one of the professions most closely related to [this compelling interest]." <u>Nowicki v. Voss</u>, 103 F.3d 133, 134 (7th Cir. 1996).

In <u>Nowicki</u>, a self-proclaimed reporter for the Divorced Dads Against Discrimination ("DDAD") who petitioned courts on behalf of fellow DDAD members was charged with the unauthorized practice of law in violation of Wisconsin law. On appeal, the plaintiff-appellant claimed that this Wisconsin law violated his right to freedom of association by "denying litigants the assistance of fellow [lay person] members at the counsel table in court." <u>Id.</u> at 135. The appellate court held that, since the defendant had failed to show "that the licensing provision violates the right to access courts in the first place, he fails to state a claim." <u>Id.</u>

Give Me Liberty's claim is similar to that raised in <u>Nowicki</u>. Give Me Liberty has engaged in the unauthorized practice of law and claims that it is immune from prosecution because of the right of freedom of association. Its self-identification as a "Pro Se Association" has no bearing on whether it can engage in the unauthorized practice of law. Given the state's compelling interest, any right to associate afforded to Give Me Liberty by the First Amendment is subject to the state's right to regulate the practice of law. Give Me Liberty is subject to the restrictions on the unauthorized practice of law to the same extent as are all petition preparers.

**FIRST AMENDMENT: FREEDOM OF SPEECH**

The First Amendment to the U.S. Constitution deals with the right of freedom of speech and of the press. Debtor cites <u>New York County Lawyer's Ass'n v. Dacey</u>, 283 N.Y.S.2d 984, 999 (N.Y. App. Div. 1967) ("<u>Dacey I</u>") for support of his argument that his activities are protected by the First Amendment's guarantee of freedom of speech. This case was reversed in <u>New York County Lawyers' Ass'n</u>, 234 N.E.2d 459 (N.Y. 1967) ("<u>Dacey</u>

12

II"), wherein the court adopts the dissenting opinion in Dacey I. The court refused to hold that an author who publishes books about avoiding probate and establishing trusts engaged in the unauthorized practice of law. Dacey I, 283 N.Y.S.2d at 996-1001 (Stevens, J., dissenting).

The facts here are markedly different. Give Me Liberty has not authored a self-help legal text. Instead, it is employing such texts to provide legal advice for its customers. The relationship that is created between Give Me Liberty and its customers is that of attorney and client, not that of author and the general public. See id. at 998; see also Grievance Comm. v. Dacey, 222 A.2d 339, 352 (Conn. 1966) (holding that Mr. Dacey, the author of several legal "self-help" books and the defendant in Dacey I, engaged in the unauthorized practice of law by preparing trust documents for his clients which were adapted from his books to meet their "needs and desires"). The case of In re Nolo, 991 S.W.2d 768 (Tex. 1999), is also inapplicable here because it pertains solely to the rights of a publisher of self-help books. No authority is presented which mandates First Amendment protection to the conduct scrutinized in this case.

## SIXTH AMENDMENT

The Sixth Amendment to the U.S. Constitution guarantees that a "person brought to trial in any . . . federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." Faretta v. California, 422 U.S. 806, 807 (1975). In Faretta, the U.S. Supreme Court held that the Sixth Amendment also includes the right of a criminal defendant to "knowingly and intelligently forgo" the benefits of counsel. Id. at 835.

The facts in Faretta have no relevance to this case and, aside from citing the case in its final brief, Give Me Liberty makes no attempt to show its applicability. Nevertheless, the Court recognizes an individual's right to have the assistance of counsel in a civil context or to represent one's self. Hughes seems to be belatedly arguing that he was denied counsel. The Court concludes no purpose would be served by addressing this issue further. Give Me Liberty was free to obtain counsel. It elected not to do so. This is not a Sixth Amendment issue.

**OTHER CONSTITUTIONAL CHALLENGES**

The Court has examined Give Me Liberty's other Constitutional challenges, including the claim that the Court violated its due process rights under the First, Fifth, Sixth and Ninth Amendments, and finds them to be without merit. Additional discussion of these claims would serve no purpose.

**IS GIVE ME LIBERTY CHARGING EXCESSIVE FEES?**

The Court now turns to the appropriateness of the fee that Give Me Liberty is charging as a bankruptcy petition preparer.  At the start of its operation, Give Me Liberty charged a fee of $350 for its bankruptcy services, which is composed of a membership fee and a petition preparation fee. During the course of these proceedings, Give Me Liberty has argued that this fee is appropriate because it is similar to the amount that We The People is charging for bankruptcy petition preparation at its location in Minneapolis, Minnesota.  Currently, it appears that Give Me Liberty is charging its customers between $120 and $230 for petition preparation and access to the "Pro Se Association."

Section 110(h)(2) provides that:

> [t]he court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee . . . found to be in excess of the value of services rendered for the documents prepared.

11 U.S.C. § 110(h)(2).  There is no single standard as to what constitutes a proper fee for the service of preparing a bankruptcy petition.  Some bankruptcy courts addressing this issue have held that a fee in excess of $50 violates § 110(h)(2).  See Wagner, 241 B.R. at 122 (finding that a petition preparer's fee of $250 was excessive and valuing the services provided at "not more than $50"); In re Bradshaw, 233 B.R. 315, 328 (Bankr. D.N.J. 1999) (stating that "[c]ourts, including this [c]ourt, have determined that $50 is generally the reasonable charge for a bankruptcy petition preparer's services").

Although a petition preparer is usually entitled to retain the portion of any fees not found to be excessive, "a bankruptcy petition preparer who engages in the unauthorized practice of law is not entitled to retain any fees for

services.  Wagner, 241 B.R. at 121 (emphasis in original). "[A]ny fee charged is in excess of the value of the services thereby illegally performed." Id.

As previously discussed, Give Me Liberty has engaged in the unauthorized practice of law in the process of preparing bankruptcy petitions.  Therefore, Give Me Liberty is not entitled to retain fees collected for preparing the petitions for the above captioned Debtors.  Here, the fee includes all monies collected from these Debtors.  Hughes' assertions that the total fee is separated into a membership fee and a document preparation fee does not change the fact that the entire fee must be reasonable.  A majority of the above-captioned Debtors paid both fees for the sole purpose of filing bankruptcy petitions and not to become active members of Give Me Liberty.  Debtor Ulferts-Taylor testified that she was unaware of her status as a "member" of Give Me Liberty.  The bifurcation of fees is a transparent attempt to skirt the requirements of § 110.

In its brief, Give me Liberty compares its rates to those charged by attorneys and concludes its rates are reasonable.  Give Me Liberty tries desperately to be treated as a legal professional while at the same time denying it is practicing law.  Its comparison of its fees with fees charged by attorneys is faulty.  If Give Me Liberty seeks an appropriate comparison, it would be to a trained typist because, by law, it is not authorized to provide more.

Going forward, assuming that it ceases engaging in the unauthorized practice of law, the Court finds that a total fee of $100 is reasonable for Give My Liberty's bankruptcy petition preparation service.

### DOES GIVE ME LIBERTY'S PRINT ADVERTISING VIOLATE § 110?

Give Me Liberty challenges the Court's authority to regulate the print advertising of a bankruptcy petition preparer.  Give Me Liberty also argues that, based on its own research, its advertisement contains less "usage of legal and law" than the advertisements used by local bankruptcy attorneys.

> Section 110(f) provides that:
>
> (1) [a] bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" <u>or any similar term</u>.
>
> (2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

11 U.S.C. § 110(f) (emphasis added). This section of the Code was enacted as a "consumer protection measure" as "Congress was concerned with debtors who may be 'ignorant of their rights both inside and outside the bankruptcy system.'" <u>Farness</u>, 244 B.R. at 468 (citing 140 Cong. Rec. H10752, H10770 (1994)). Specifically, "§ 110(f) is appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights." <u>Farness</u>, 244 B.R. at 468 (citing <u>In re Hobbs</u>, 213 B.R. 207, 215 (Bankr. D. Me. 1997)).

Most courts addressing this issue have found that § 110(f) is violated by any advertising that gives the impression that a petition preparer is providing legal services. See <u>Farness</u> 244 B.R. at 468 (finding that advertising containing the phrases "no lawyers involved save money" and "legal alternative" violate § 110(f)); <u>Kaitangian</u>, 218 B.R. at 108 (noting that use of the word "'paralegal' in [the petition preparer's] advertising create[d] the misleading impression that [the petition preparer] was qualified to give legal advice"); <u>In re Calzadilla</u>, 151 B.R. 622, 626 (Bankr. S.D. Fla. 1993); <u>Hobbs</u>, 213 B.R. at 215. In addition, courts also typically take a "plain language" approach to § 110(f) and bar any use of the word "legal" in these types of advertisements. See <u>Farness</u>, 244 B.R. at 468 (noting that "[t]he statute does not say that some uses of the word "legal" are acceptable through context, modifier, or otherwise"). The prohibition against use of the word "legal" or any similar term is "absolute and unambiguous." <u>Id.</u>

The Court has the power to regulate the advertising of a bankruptcy petition preparer under § 110(f). Give Me Liberty is in violation of this section. It has placed advertisements

16

in the Cedar Rapids Gazette which state that it is a "self help law center." The word "law" is emphasized in the organization's logo which also contains a depiction of a revolutionary war soldier and the words "Give Me Liberty," "self help," "center," and "Pro Se Association." Here, the Court finds that the use of the word "law" in this manner presents a violation of § 110(f).

The text of the advertisement is ambiguous. Although it states that "We can not give Legal Advice (in Compliance with Iowa Law)," the advertisement then asserts that "As a member you have the opportunity and right to speak with other members and/or volunteers that help in the center." This language would lead a reasonable person to conclude that Give Me Liberty is providing legal services. Additionally, the advertisement states that "Give Me Liberty was formed to assist people that want to save the high cost of an attorney and believes that many issues do not always require an [a]ttorney." These statements compel the conclusion that, in addition to preparing their documents, Give Me Liberty provides its members with advice necessary to solve their legal problems. These claims negate Give Me Liberty's disclaimers that "we are not attorneys" and "we can not give legal advice."

The newspaper advertisements violate § 110(f) as they create the impression that Give Me Liberty is providing legal services.

### THE COURT'S POWER TO ENJOIN A BANKRUPTCY PETITION PREPARER

A bankruptcy court has the power to enjoin the activities of a petition preparer under § 110. In re More, 283 B.R. 852, 856 (Bankr. E.D.N.C. 2002). The court "may enjoin the petition preparer from engaging in further violations of the statute, or may permanently enjoin a petition preparer from preparing any petitions in the future if the preparer has continually engaged in conduct in violation of the statute." Dunkle, 272 B.R. at 455. Though § 110 does not specifically address the unauthorized practice of law, courts typically find that it fits within the prohibited acts stated in § 110(j)(2)(A)(i)(I) and § 110(j)(2)(A)(i)(III). Id.; In re Howerton, 2004 WL 2757908, *3 (Bankr. M.D.N.C. 2004). Section 110(j) provides that:

>   (1) . . . The United States trustee. . . may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
>
>   (2) [The court may enjoin the petition preparer] if [it] finds that–
>
>     (i) a bankruptcy petition preparer has–
>
>       (I) engaged in conduct in violation of this section or any provision of this title a violation of which subjects a person to criminal penalty; [or]
>
>   . . .
>
>       (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
>
>     (ii) injunctive relief is appropriate to prevent the recurrence of such conduct. . . .

11 U.S.C. § 110(j).

**CONCLUSION**

Give Me Liberty has engaged in the unauthorized practice of law in violation of § 110. While recognizing the First Amendment right of individuals to congregate and enter into a free discussion of ideas, the activities described in this ruling are not protected speech. The Court hereby enjoins Give Me Liberty from operating its petition preparation service in conjunction with the "Pro Se Association" which, in its present format, is merely an artifice to give legal advice without complying with the law.

The Court's function is not to advise Give Me Liberty on how to change its current operations to comply with the prohibitions on the unauthorized practice of law. The Court's function is limited to determining whether Give Me Liberty is engaging in prohibited conduct and to enjoin such conduct pursuant to § 110(j). Clearly, such conduct has occurred. To that end, the Court enters the following orders.

**WHEREFORE**, Give Me Liberty is enjoined from providing any bankruptcy services outside of typing petitions.  It is enjoined from offering or providing legal advice or counseling by any component of Give Me Liberty, including, but not limited to, its "Pro Se Association," "members," and "volunteers," in connection with bankruptcy document preparation services.

**FURTHER**, while the Court could seek reimbursement of the fees charged to the above-captioned Debtors, the Court elects not to do so.  However, going forward, Give Me Liberty shall not charge in excess of a total of $100 for its Chapter 7 petition preparation service.  This is the total amount which may be charged per customer.  This rate is all inclusive and shall include any amounts paid by, or on behalf of, "members," customers, or any other person receiving such service, whether in the form of "dues," "fees," "contributions," or any other form.

**FURTHER**, Give Me Liberty is enjoined from using its current advertising copy in any newspaper, magazine, internet, radio or television advertising.

**FURTHER,** Give Me Liberty is enjoined from maintaining its storefront sign as currently configured for the reasons set forth in this opinion.

**FURTHER**, the prohibitions in this order are effective as of the time of its filing.

**DATED AND ENTERED**   April 1, 2005

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE